# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

| | |
|---|---|
| ERIC DEVON PARSONS,<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION (OF DELAWARE), LLC aka TRANS UNION LLC dba TRANSUNION,<br><br>Defendant. | Index No.<br><br>**VERIFIED COMPLAINT AND JURY DEMND** |

## NATURE OF THE ACTION AND INTRODUCTION

1. This action is brought by Plaintiff ERIC DEVON PARSONS ("Plaintiff" or "Mr. Parsons") to address the conduct by Defendant TRANS UNION (OF DELAWARE), LLC aka TRANS UNION LLC dba TRANSUNION ("Defendant" or "TransUnion"), including its deliberate and negligent disregard for their obligations under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., (the "FCRA"), i.e., 15 U.S.C. §§ 1681g(a)(1), 1681n, and 1681o.

2. This lawsuit is based on TransUnion's persistent failure to provide Mr. Parsons with his consumer file upon his request, which is his statutory right under 15 U.S.C. § 1681g.

3. TransUnion's persistent failure to provide Plaintiff with his consumer file upon his request constitutes willful noncompliance of its statutory duties under the FCRA.

4. TransUnion's persistent failure to provide Plaintiff with his consumer file upon his request constitutes, at minimum, negligent noncompliance of its statutory duties under the FCRA.

5. TransUnion's herein-alleged conduct has resulted in significant damages to Plaintiff.

6. TransUnion's herein-alleged conduct has compromised Mr. Parson's legal rights, well-being, and his ability to review his file to address its inaccuracies and incompleteness.

7. This case further arises from the TransUnion's broad duty to exercise reasonable care in

maintaining, managing, and disseminating Mr. Parson's consumer file information.

8. TransUnion has breached its duty by failing to comply with specific FCRA requirements, thereby causing substantial harm to Mr. Parsons.

9. Through this lawsuit, Mr. Parsons seeks rightful compensation for the damages incurred because of the TransUnion's herein-alleged conduct, including TransUnion inaction.

10. This case highlights the critical importance of diligently upholding the provisions of the FCRA.

11. This action emphasizes the urgent need for legal accountability upon consumer reporting agencies ("CRAs"), such as TransUnion, when the rights of consumers are disregarded.

12. This action seeks to ensure that organizations, namely CRA, such as TransUnion, are held accounting for their failure to abide by their responsibilities pursuant to the FCRA.

**PARTIES**

***Plaintiff ERIC DEVON PARSONS***

13. Mr. Parsons is a natural person.

14. Plaintiff is a "consumer" within the meaning of the FCRA, as per 15 U.S.C. § 1681a(c).

***Defendant TRANS UNION (OF DELAWARE), LLC aka TRANS UNION LLC dba TRANSUNION***

15. Upon information and belief, Defendant TRANS UNION (OF DELAWARE), LLC aka TRANS UNION LLC dba TRANSUNION ("TransUnion") is a foreign limited liability company.

16. Upon information and belief, TransUnion is an American consumer reporting agency.

17. Upon information and belief, TransUnion collects and aggregates information on over one billion individual consumers in over thirty countries including "200 million files profiling nearly every credit-active consumer in the United States".

18. Upon information and belief, TransUnion's customers include over 65,000 businesses.

19. Upon information and belief, based in Chicago, Illinois, TransUnion's 2014 revenue was US$1.3 billion.

20. Upon information and belief, TransUnion is the smallest of the three largest credit agencies, along with Experian and Equifax (known as the "Big Three").

21. Upon information and belief, TransUnion also markets consumer reports (also known as "credit reports") and other credit and fraud-protection products directly to consumers.

22. Upon information and belief, like all credit reporting agencies, TransUnion is required by U.S. law to provide consumers with one free credit report every year.

23. Upon information and belief, additionally, a growing segment of TransUnion's business is its business offerings that use advanced big data, particularly its deep AI-TLOxp product.

*TransUnion's History*

24. Upon information and belief, TransUnion was originally formed in 1968 as a holding company for Union Tank Car Company, making TransUnion a descendant of Standard Oil through Union Tank Car Company.

25. Upon information and belief, the following year, TransUnion acquired the Credit Bureau of Cook County, which possessed and maintained 3.6 million credit accounts.

26. Upon information and belief, in 1981, a Chicago-based holding company, The Marmon Group, acquired TransUnion for approximately $688 million.

27. Upon information and belief, in 2010, Goldman Sachs Capital Partners and Advent International acquired TransUnion from Madison Dearborn Partners.

28. Upon information and belief, in 2014, TransUnion acquired Hank Asher's data company TLO.

29. Upon information and belief, on June 25, 2015, TransUnion became a publicly traded company for the first time, trading under the symbol TRU.

30. Upon information and belief, TransUnion eventually began to offer products and services for both businesses and consumers.

31. Upon information and belief, for businesses, TransUnion updated its traditional credit score offering to include trended data that helps predict consumer repayment and debt behavior. Upon information and belief, that product, referred to as CreditVision, launched in October 2013.

32. Upon information and belief, TransUnion's SmartMove™ service facilitates credit and background checks for landlords. Upon information and belief, the service also provides credit and background checks for partner companies, such as RentSpree.

33. Upon information and belief, in September 2013, the company acquired eScan Data Systems of Austin, Texas, to provide post-service eligibility determination support to hospitals and healthcare systems. Upon information and belief, the technology was integrated into TransUnion's ClearIQ platform, which tracks patients demographic and insurance related information to support benefit verification.

34. Upon information and belief, in November 2013, TransUnion acquired TLO LLC, a company that leverages data in support of its investigative and risk management tools. Upon information and belief, its TLOxp technology aggregates data sets and uses a

proprietary algorithm to uncover relationships between data. Upon information and belief, TLOxp also allows licensed investigators and law enforcement professionals to access personally identifiable information from credit header data.

35. Upon information and belief, in 2014, a TransUnion analysis found that reporting rental payment information to credit bureaus can positively affect credit scores. Upon information and belief, as a result, TransUnion initiated a service called ResidentCredit, making it easy for property owners to report data about their tenants on a monthly basis. Upon information and belief, these reports include the amount each tenant pays, the timeliness of their last payment, and any remaining balance the tenant currently owes. Upon information and belief, as a result, some companies have started reporting rent payment information to TransUnion.

36. Upon information and belief, in 2015, TransUnion acquired Trustev, a digital verification company specializing in online fraud for $21 million, minus debts.

37. Upon information and belief, in 2017, TransUnion acquired FactorTrust, a consumer reporting agency specializing in alternative credit data.

38. Upon information and belief, in mid-April 2018, TransUnion announced it intended to buy UK-based CallCredit Information Group for $1.4 billion, subject to regulatory approval.

39. Upon information and belief, in December 2021, TransUnion completed the acquisitions of Neustar, initially announced in September 2021 for $3.1 billion, and Sontiq, initially announced in October 2021 for $638 million.

40. Upon information and belief, in February 2023, TransUnion announced it was rebranding its "thousands of existing B2B products into seven business lines." These include:

TruAudience, TruValidate, TruContact (all based on former offerings from Neustar), TruVision, TruIQ, TruEmpower, and TruLookup.

*TransUnion's Legal and Regulatory Issues*

41. Upon information and belief, in 2003, Judy Thomas of Klamath Falls, Oregon, was awarded $5.3 million in a successful lawsuit against TransUnion. Upon information and belief, the award was made on the grounds that it took her six years to get TransUnion to remove incorrect information in her consumer report a.k.a. credit report.

42. Upon information and belief, in 2006, after spending two years trying to correct erroneous credit information that resulted from being a victim of identity theft, a fraud victim named Sloan filed suit against all three of the US's largest credit agencies. Upon information and belief, TransUnion and Experian settled out of court for an undisclosed amount. Upon information and belief, in *Sloan v. Equifax*, a jury awarded Sloan $351,000. Upon information and belief, "She wrote letters. She called them. They saw the problem. They just didn't fix it," said her attorney, A. Hugo Blankingship III.

43. Upon information and belief, TransUnion has also been criticized for concealing charges.

44. Upon information and belief, many TransUnion users complained of not being aware of a $17.95/month charge for holding a TransUnion account.

45. Upon information and belief, in March 2015, following a settlement with the New York Attorney-General, TransUnion, along with other credit reporting companies, Experian and Equifax, agreed to help consumers with errors and red flags on credit reports. Upon information and belief, under the new settlement, credit-reporting firms are required to use trained employees to respond when a consumer flags a mistake

on their file. Upon information and belief, these employees are responsible for communicating with the lender and resolving the dispute.

46. Upon information and belief, in January 2017, TransUnion was fined $5.5 million and ordered to pay $17.6 million in restitution, along with Equifax, by the Consumer Financial Protection Bureau (the "CFPB").

47. Upon information and belief, the CFPB fined TransUnion and Equifax "for deceiving consumers about the usefulness and actual cost of credit scores they sold to consumers."

48. Upon information and belief, the CFPB also said TransUnion and Equifax "lured consumers into costly recurring payments for credit-related products with false promises."

49. Upon information and belief, consumer reporting agencies had the most complaints of all companies filed with the CFPB by consumers in 2018, with 34% of all complaints directed at TransUnion, Equifax, and Experian that year.

50. Upon information and belief, in June 2017, a California jury ruled against TransUnion with a $60 million verdict in the largest FCRA verdict in history. Upon information and belief, the San Francisco federal court jury awarded $60 million in damages to consumers who were falsely reported on a government list of terrorists and other security threats. Upon information and belief, the plaintiffs' team of attorneys at Francis & Mailman, P.C. partnered with another California-based firm in the class action. Upon information and belief, following up on this, in April 2022, the CFPB said TransUnion is "incapable of operating its businesses lawfully."

*TransUnion's Security Issues*

51. Upon information and belief, on October 13, 2017, the website for TransUnion's Central American division was reported to have been redirecting visitors to websites that attempted drive-by downloads of malware disguised as Adobe Flash updates.

52. Upon information and belief, the attack had been performed by hijacking third-party analytics JavaScript from Digital River brand FireClick.

53. Upon information and belief, on March 17, 2022, TransUnion South Africa disclosed that hackers breached one of their servers and allegedly stole data of 54 million customers, demanding a ransom to not release it, the group N4ughtysecTU claims responsibility

**JURISDICTION**

54. This court has jurisdiction under 15 U.S.C. § 1681p.

55. This court has jurisdiction under 15 U.S.C. § 1681p to enforce any liability by TransUnion to Plaintiff under 15 U.S.C. § 1681n.

56. This court has jurisdiction under 15 U.S.C. § 1681p to enforce any liability by TransUnion to Plaintiff under 15 U.S.C. § 1681o.

**ADDITIONAL FACTUAL ALLEGATIONS**

*Plaintiff's First TransUnion File Request*

57. Plaintiff realleges and reasserts all of the allegations contained in paragraph 1 through 56.

58. In a letter dated January 20, 2024, and mailed on or about January 24, 2024, Plaintiff made his first written request to TransUnion for his consumer file, as per 15 U.S.C. § 1681g(a), which was sent to TransUnion via U.S.P.S. Certified Mail/Return Receipt Requested (hereinafter referred to as the "First TransUnion File Request").

59. A true and correct redacted copy of Plaintiff's letter (without the noted enclosures) dated January 20, 2024, and mailed on or about January 24, 2024, constituting Plaintiff's first

written request to TransUnion for his consumer file, as per 15 U.S.C. § 1681g(a), which was sent to TransUnion via U.S.P.S. Certified Mail/Return Receipt Requested, is attached hereto and incorporated herein as **Exhibit A**.

60. Plaintiff's letter dated January 20, 2024, and mailed on or about January 24, 2024, constituting Plaintiff's first written request to TransUnion for his consumer file, as per 15 U.S.C. § 1681g(a), which was sent to TransUnion via U.S.P.S. Certified Mail/Return Receipt Requested had the following tracking number provided by U.S.P.S.: 9114999944314027340894.

61. Plaintiff's letter dated January 20, 2024, and mailed on or about January 24, 2024, constituting Plaintiff's first written request to TransUnion for his consumer file, as per 15 U.S.C. § 1681g(a), which was sent to TransUnion via U.S.P.S. Certified Mail/Return Receipt Requested with tracking number 9114999944314027340894 included a true copy of Plaintiff's Social Security card and driver's license.

62. Plaintiff's letter dated January 20, 2024, and mailed on or about January 24, 2024, constituting Plaintiff's first written request to TransUnion for his consumer file, as per 15 U.S.C. § 1681g(a), which was sent to TransUnion via U.S.P.S. Certified Mail/Return Receipt Requested with tracking number 9114999944314027340894 "was delivered to the front desk, reception area, or mail room at 10:46 am on January 31, 2024" per the U.S.P.S.

63. A true and correct copy of the USPS Tracking® information provided online by the U.S.P.S. is attached hereto and incorporated herein as **Exhibit B**.

64. Plaintiff's above-referenced file request to TransUnion alleged in paragraph #57 requested:

> Pursuant to 15 U.S.C. § 1681g(a), I request to be provided the following information:

1) All information in my consumer file;

> 2) The sources of the information in my consumer file;
> 3) Identification of each person that procured my consumer report, including, the name of the person or, if applicable, the trade name (written in fill) under which such person conducts business, and the address and telephone number of the person;
> 4) The dates, original payees, and amount any checks upon which is based any adverse characterization of me, if applicable; and
> 5) A record of all inquiries received by you during the last 1-year period preceding my request.
>
> Note, I request a copy of my consumer file, and not a credit score and not a consumer disclosure. Mail a copy of the above-requested information to my address written above on the letterhead. This is my first request under § 1681g in a 12-month period, so there should be no charge to me. I have enclosed a copy of proper identification as proof of my identity and current mailing address.

65. Contrary to Plaintiffs clear file request, TransUnion response, dated February 1, 2024, did not contain a copy of the "file" requested in Plaintiff's letter, but Transunion provided only what some in the consumer credit industry may call a consumer disclosure, stating, in part: "In the pages that follow you will see a full copy of your credit report."

*Plaintiff's Second TransUnion File Request*

66. In a letter dated February 18, 2024, and mailed on or about February 20, 2024, Plaintiff made his second written request to TransUnion for his consumer file, as per 15 U.S.C. § 1681g(a), which was sent to TransUnion via U.S.P.S. Certified Mail/Return Receipt Requested (hereinafter referred to as the "Second TransUnion File Request").

67. A true and correct redacted copy of Plaintiff's letter (with the noted enclosures) dated February 18, 2024, and mailed on or about February 20, 2024, constituting Plaintiff's second written request to TransUnion for his consumer file, as per 15 U.S.C. § 1681g(a), which was sent to TransUnion via U.S.P.S. Certified Mail/Return Receipt Requested, is attached hereto and incorporated herein as **Exhibit C**.

68. Plaintiff's letter dated February 18, 2024, and mailed on or about February 20, 2024,

constituting Plaintiff's first written request to TransUnion for his consumer file, as per 15 U.S.C. § 1681g(a), which was sent to TransUnion via U.S.P.S. Certified Mail/Return Receipt Requested had the following tracking number provided by U.S.P.S.: 9114999944314027342157.

69. Plaintiff's letter dated February 18, 2024, and mailed on or about February 20, 2024, constituting Plaintiff's second written request to TransUnion for his consumer file, as per 15 U.S.C. § 1681g(a), which was sent to TransUnion via U.S.P.S. Certified Mail/Return Receipt Requested with tracking number 9114999944314027342157, included a true copy of Plaintiff's Social Security card and driver's license.

70. Plaintiff's letter dated February 18, 2024, and mailed on or about February 20, 2024, constituting Plaintiff's second written request to TransUnion for his consumer file, as per 15 U.S.C. § 1681g(a), which was sent to TransUnion via U.S.P.S. Certified Mail/Return Receipt Requested with tracking number 9114999944314027342157 "was delivered to the front desk, reception area, or mail room at 10:27 am on February 22, 2024" per the U.S.P.S.

71. A true and correct copy of the USPS Tracking® information provided online by the U.S.P.S. is attached hereto and incorporated herein as **Exhibit D**.

72. Plaintiff's Second TransUnion File Request alleged in paragraph #66 stated the following:

> I previously sent you the enclosed letter requesting a complete copy of my consumer file, *inter alia*. You received my letter and were required to take the appropriate action as required by law. However, you willfully failed to **disclose** the contents of my consumer file, *inter alia*, as requested. Your action or inaction is an intentional violation of the FCRA or, at least, a negligent violation.
>
> As a result of your conduct, you shall now promptly **disclose** my consumer file content and requests. Additionally, per the FCRA, you are liable to me for damages for your unlawful conduct. Thus, in addition to your **disclosure** of the requested information, you are commanded to send a check in the amount of $1,000 payable to the order of my name as written above in the letterhead.

Be advised, this is not another request or opportunity for you to perform on my previous request. A reasonable time period to provide said disclosure has expired and shall not be extended by law.

Promptly **disclose** my consumer file the requested information as requested and send me the check to my mailing address listed above in no later than fourteen (14) days of the date of this letter. Time is of the essence. If you do not timely comply with the requests within this letter, I intend to turn this matter over to a consumer lawyer for consideration of litigating the issue in federal court.

73. Contrary to Plaintiff's clear file request, TransUnion response, dated February 24, 2024, did not contain a copy of the "file" requested in Plaintiff's letter, but Transunion provided only what some in the consumer credit industry may call a consumer disclosure, stating, in part: "Enclosed is the TransUnion Personal Credit Report that you requested."

74. Despite the above-alleged diligent efforts by Plaintiff , TransUnion responses, including disregard its statutory requirement to provide Plaintiff with his complete consumer file.

75. TransUnion mishandling of Plaintiff's file requests reflect a broader operational practice of obfuscating the distinction between a consumer "file" and consumer disclosures, which they misidentify as a "credit report," and complete consumer file per 15 U.S.C. § 1681g(a).

76. TransUnion herein-alleged actions and inactions constitute a willful and/or negligent disregard for § 1681g(a) of the FCRA, has denied Plaintiff access to his file, and has also potentially concealed information critical to Plaintiff's financial and personal reputation.

77. TransUnion's above-alleged undisclosed consumer file information concerning Plaintiff, which, in part, has been provided to third parties by TransUnion, remains inaccessible to Plaintiff, depriving him of the opportunity to verify the accuracy and completeness of said information or dispute its contents, pursuant to his rights under the FCRA.

78. Plaintiff, in accordance with FCRA requirements, meticulously specified the statutory basis for his file requests to TransUnion for his full and complete consumer file.

79. Plaintiff's herein-alleged file requests were not casual inquiries, but were grounded in clear statutory rights afforded to Plaintiff under 15 U.S.C. § 1681g(a) of the FCRA, intended to ensure consumers can access all information held by consumer reporting agencies ("CRAs") about them, including but not limited to creditworthiness, reputation, and personal characteristics, *inter alia*.

80. TransUnion, which is a "consumer reporting agency" as defined under the FCRA, bore the legal duty to exercise reasonable care in furnishing Plaintiff with his complete consumer file upon request, which is TransUnion's duty under 15 U.S.C. § 1681g(a).

81. TransUnion failed to fulfill this duty to Plaintiff, despite Plaintiff's repeated, documented requests to TransUnion for his complete consumer file.

82. TransUnion herein alleged omission directly violates the FCRA's provisions, evidencing a willful disregard for legislative mandates designed to safeguard public welfare.

83. As a direct and proximate result of TransUnion's herein-alleged conduct, Plaintiff has incurred damages and injuries, including, but not limited to the following:

   a. **Failure to Provide Consumer File:** Despite multiple formal requests, TransUnion failed to provide Plaintiff with a complete consumer file as per 15 U.S.C. § 1681g. TransUnion's failure resulted in personal and financial damages to Plaintiff.

   b. **Financial Losses**:

      1. **Mailing Costs:** Plaintiff incurred significant expenses related to mailing written file requests to TransUnion to obtain Plaintiff's consumer file. These costs and expenses include U.S.P.S. postage and certified mail fees, totaling approximately $9.85 per mailing for multiple mailings to TransUnion.

2. **Legal and Consultation Fees:** Initially, I sought legal advice from an attorney to understand my rights and potential remedies available under the FCRA. As the issue escalated without resolution, it became necessary to engage an attorney to litigate this matter. This step has significantly increased my financial burden, further compounding the financial harm caused by the failure to access my consumer file, costing Plaintiff money.

3. **Credit and Financial Opportunities:** Plaintiff's inability to access and verify the accuracy of his consumer file potentially affected Plaintiff's consumer credit decisions, which may have resulted in less favorable loan terms, increased interest rates, or outright denials of credit, affecting Plaintiff's financial health.

c. **Emotional Distress**: Plaintiff's ongoing uncertainty about the accuracy of his TransUnion consumer file and the potential misuse of his personal information has caused Plaintiff considerable anxiety and emotional distress. Said emotional distress is compounded by the lack of resolution and transparency from TransUnion. Plaintiff's frustration and helplessness from not being able to access Plaintiff's TransUnion consumer file to address potential inaccuracies has significantly impacted Plaintiff's daily life and well-being.

d. **Loss of Personal Time via Efforts to Resolve Issues**: Plaintiff has spent considerable time and energy attempting to obtain his file from TransUnion. Plaintiff's efforts include drafting and mailing requests to TransUnion, tracking mail deliveries of said requests to TransUnion, and engaging in communications with TransUnion pursuant to said file requests made to TransUnion.

84. Plaintiff's herein-alleged severe emotional distress manifests itself as anxiety, stress, and a compromised sense of financial security, directly attributable to TransUnion actions and/or inactions.

85. The severe emotional distress and harm suffered by Plaintiff and other physical manifestations thereof are the direct and foreseeable consequences of TransUnion's failure to comply with its statutory duties under the FCRA, namely 15 U.S.C. § 1681g(a).

86. The above-alleged causal link between TransUnion's conduct alleged herein and Plaintiff's damages links TransUnion's role in precipitating the Plaintiff's injuries and damages.

87. TransUnion's herein-alleged conduct constitute violations of the FCRA, a statute enacted to protect consumers by ensuring access to accurate and complete credit information.

88. Despite Plaintiff's explicit and repeated requests, TransUnion's responses systematically evaded the statutory obligations set forth in the FCRA, namely 15 U.S.C. § 1681g(a).

89. TransUnion's above-alleged evasion was not an isolated incident, but is indicative of a broader pattern of behavior, whereby Defendant, through its operational practices and internal policies, obstructs consumers' access to their full consumer files.

90. TransUnions's herein-alleged practices are in direct violation of 15 U.S.C. § 1681g.

91. Further, TransUnions's herein-alleged practices also undermine the transparency and accountability principles purposed in the FCRA.

92. Despite clear statutory guidelines under 15 U.S.C. § 1681g(a), which require CRAs like TransUnion to furnish to consumers, such as Plaintiff, their complete file upon request, TransUnion's consistent failure to do so — as experienced by the Plaintiff through repeated, unfulfilled requests — suggests a systemic issue within TransUnion's organization.

93. TransUnion above-alleged pattern of behavior not only challenges the integrity of its compliance with the FCRA, but also raises serious concerns about the protection of consumers' rights to access, verify, and dispute personal information held by TransUnion.

94. The statutory right of consumers to obtain their complete consumer file, a right intended to ensure transparency and accuracy in credit reporting, is hindered by TransUnion's operational choices, indicating willful non-compliance with the FCRA's provisions.

95. The statutory right of consumers to obtain their complete consumer file, a right intended to ensure transparency and accuracy in credit reporting, is hindered by TransUnion's operational choices, indicating negligent non-compliance with the FCRA's provisions

96. TransUnion's repeated mischaracterization of Plaintiff's "file" requests and TransUnion's subsequent failure to provide to Plaintiff the requested consumer "file" have significant implications.

97. TransUnion's herein-alleged conduct deprives Plaintiff of his ability to review and dispute potentially inaccurate or incomplete information in his file, and it also conceals information that may be disseminated to third parties, affecting Plaintiff's creditworthiness, employment prospects, insurance premiums, and much more.

98. In light of the detailed recounting of TransUnion's responses to Plaintiff's legitimate requests for his complete consumer "file[,]" it is evident that there is a systemic failure or outright refusal by TransUnion to adhere to the obligations set forth by the FCRA.

99. Through multiple attempts to secure his full consumer "file," Plaintiff has encountered obstacles that underscore a broader issue within TransUnion's operational framework, a disregard for statutory mandates designed to protect consumers.

100. TransUnion's repeated failure to comply with its clear legal requirements under the

FCRA illuminates the need for judicial intervention to rectify these ongoing violations and to enforce the provisions of the FCRA, ensuring that consumer rights, such as Plaintiff's are not merely theoretical, but are actively enforced and protected.

**COUNT I – VIOLATION OF 15 U.S.C. §1681g(a)**

101. Plaintiff realleges and reasserts all of the allegations contained in paragraph 1 - 100.

102. TransUnion violated 15 U.S.C. § 1681g(a) by failing to furnish to Plaintiff a complete copy of his consumer file in response to Plaintiff's requests for his consumer file.

103. TransUnion's refusal to provide Plaintiff a copy of his consumer file disregards its explicit statutory requirements under 15 U.S.C. § 1681g(a), but also inhibits Plaintiff's ability to ensure the accuracy of his financial and personal information, a cornerstone of consumer protection under the FCRA.

104. In direct violation of the FCRA specifically under the provisions of 15 U.S.C. § 1681g(a), TransUnion has systematically failed to fulfill its legal obligation to provide Plaintiff with his comprehensive consumer "file," despite repeated requests.

105. TransUnion's persistent refusal to comply with the FCRA, namely 15 U.S.C. § 1681g(a), establishes TransUnion's conduct constituted willful noncompliance of the FCRA, rendering TransUnion liable to Plaintiff under 15 U.S.C. §1681n.

106. TransUnion's willful disregard for the FCRA has materially harmed Plaintiff.

107. Plaintiff asserts that TransUnion also negligently violated 15 U.S.C. § 1681g(a) by its failure to furnish a complete consumer file in response to Plaintiff's requests.

108. TransUnion's neglect disregards its statutory duties under the FCRA, but also significantly impairs the Plaintiff's capacity to verify and ensure the accuracy of his financial and personal data—a vital aspect of consumer rights under the FCRA.

109. In a pattern of negligent non-compliance with the FCRA, namely 15 U.S.C. § 1681g(a), TransUnion has consistently neglected its statutory duty to provide the Plaintiff with his complete copy of his consumer file despite his multiple requests.

110. TransUnion's repeated conduct not only ignores the specific stipulations of the FCRA, but also constitutes negligent non-compliance, making it liable to Plaintiff under 15 U.S.C. §1681o.

111. TransUnion's negligent failure to comply with 15 U.S.C. § 1681g(a) has caused significant harm to the Plaintiff, thereby rendering it liable to Plaintiff under the FCRA.

## DEMAND FOR RELIEF

112. **WHEREFORE**, Plaintiff demands entry of judgment against TransUnion for:

a. Actual damages in an amount to be determined according to proof at trial;

b. Statutory damages in an amount not less than $100 and not more than $1,000;

c. Such amount of punitive damages as the court may allow;

d. Costs of this action together with attorney's fees as determined by the court; and

e. such other and further relief that the court deems appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Dated: New York, New York
June 8, 2024

Respectfully submitted,

Brian L. Ponder

Brian L. Ponder, Esq.
BRIAN PONDER LLP
TRIAL LAWYERS
745 Fifth Avenue, Suite 500
New York, New York 10151-0099
Telephone: (646) 450-9461
Facsimile: (646) 607-9238 (not for service)
Email: brian@brianponder.com (not for service)
ATTORNEY FOR PLAINTIFF

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

| | |
|---|---|
| ERIC DEVON PARSONS,<br><br>Plaintiff,<br><br>v.<br><br>TRANS UNION (OF DELAWARE), LLC aka TRANS UNION LLC dba TRANSUNION,<br><br>Defendant. | Index No.<br><br>**PLAINTIFF'S VERIFICATION PURSUANT TO NY CPLR § 3020** |

I, ERIC DEVON PARSONS, swear, affirm, and declare under penalties of perjury and state:

1. I am the plaintiff in the above-entitled civil action;
2. I have read the foregoing **VERIFIED COMPLAINT AND JURY DEMAND** and know the contents thereof; and
3. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

Dated: June 8, 2024

Eric Devon Parsons
ERIC DEVON PARSONS

FILED: QUEENS COUNTY CLERK 06/08/2024 07:54 PM INDEX NO. 712099/2024
NYSCEF DOC. NO. 2 RECEIVED NYSCEF: 06/08/2024

# Exhibit A

Eric Devon Parsons

January 20, 2024

TRANS UNION LLC
555 W. Adams St.
Chicago, IL 60661

VIA U.S.P.S. CERTIFIED MAIL

**Re: Consumer file request**

To TRANS UNION LLC, Aaron W. Barlow, Catherin A. Madden, Christopher Cartwright, Colleen M. Tunney, David D. McCrary, David Gilbert, David M. Neenan, Denise A. Norgle, Donald T. Pickett, Gary S. Friedlander, Geoffrey J. Hakel, Gordon E. Schaechterle, James M. Peck, Jeffrey E. Perkins, John W. Blenke, Mary K. Krupka, Michael J. Forde, Milton Silva-Craig, Mitchell R. Hoppenworth, Mohit Kapoor, Robert F. Ryan, Robert J. Callaci, Samuel A. Hamood, Steve D. Sassaman, Todd M. Cello, Vincent A. Incndino, and William R. Stockdale:

My name is Eric Devon Parsons. My Social Security # is . My DOB is

Pursuant to 15 U.S.C. 1681g(a), I request to be provided the following information:

1) All information in my consumer file;
2) The sources of the information in my consumer file;
3) Identification of each person that procured my consumer report, including, the name of the person or, if applicable, the trade name (written in fill) under which such person conducts business, and the address and telephone number of the person;
4) The dates, original payees, and amount any checks upon which is based any adverse characterization of me, if applicable; and
5) A record of all inquiries received by you during the last 1-year period preceding my request.

Note, I request a copy of my consumer file, and not a credit score and not a consumer disclosure.

Mail a copy of the above-requested information to my address written above on the letterhead.

This is my first request under § 1681g in a 12-month period, so there should be no charge to me.

I have enclosed a copy of proper identification as proof of my identity and mailing address.

Sincerely,

s/ Eric Devon Parsons

FILED: QUEENS COUNTY CLERK 06/08/2024 07:54 PM INDEX NO. 712099/2024

NYSCEF DOC. NO. 3                                                                    RECEIVED NYSCEF: 06/08/2024

# Exhibit B

# USPS Tracking®

FAQs >

Remove ×

**Tracking Number:**

## 9114999944314027340894

**Copy** **Add to Informed Delivery (https://informeddelivery.usps.com/)**

### Latest Update

Your item was delivered to the front desk, reception area, or mail room at 10:46 am on January 31, 2024 in CHICAGO, IL 60661.

---

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

### Delivered

**Delivered, Front Desk/Reception/Mail Room**

CHICAGO, IL 60661
January 31, 2024, 10:46 am

**Out for Delivery**

CHICAGO, IL 60661
January 31, 2024, 6:10 am

**Arrived at Post Office**

CHICAGO, IL 60699
January 31, 2024, 4:18 am

**Arrived at USPS Regional Destination Facility**

CHICAGO IL DISTRIBUTION CENTER
January 30, 2024, 9:40 pm

**In Transit to Next Facility**

January 30, 2024

**Arrived at USPS Facility**

Feedback

MISSOURI CITY, TX 77489
January 27, 2024, 3:19 pm

**Arrived at USPS Facility**
HOUSTON, TX 77032
January 25, 2024, 9:33 pm

**Arrived at USPS Regional Origin Facility**
CHARLOTTE NC DISTRIBUTION CENTER
January 24, 2024, 7:39 pm

**Departed Post Office**
WACO, NC 28169
January 24, 2024, 4:33 pm

**USPS in possession of Item**
WACO, NC 28169
January 24, 2024, 4:24 pm

**Hide Tracking History**

**What Do USPS Tracking Statuses Mean? (https://faq.usps.com/s/article/Where-is-my-package)**

**Text & Email Updates**

**USPS Tracking Plus®**

**Product Information**

**See Less**

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

# Exhibit C

Eric Devon Parsons

February 18, 2024

TRANS UNION LLC
Attn: Aaron W. Barlow,
555 W. Adams St.
Chicago, IL 60661

VIA U.S.P.S. CERTIFIED MAIL,

**Re: Failure to provide consumer file; request for damages under the FCRA**

To TRANS UNION LLC, Aaron W. Barlow,

I previously sent you the enclosed letter requesting a complete copy of my consumer file, *inter alia*. You received my letter and were required to take the appropriate as required by law. However, you have willfully failed to **disclose** the contents of my consumer file, *inter alia*, as requested. Your action or inaction is an intentional violation of the FCRA or, at least, a negligent violation.

As a result of your conduct, you shall now promptly **disclose** my consumer file content and requests. Additionally, per the FCRA, you are liable to me for damages for your unlawful conduct. Thus, in addition to your **disclosure** of the requested information, you are commanded to send a check in the amount of $ payable to the order of my name as written above in the letterhead.

Be advised, this is not another request or opportunity for you to perform on my previous request. A reasonable time period to provide said disclosure has expired and shall not be extended by law.

Promptly **disclose** my consumer file the requested information as requested and send me the check to my mailing address listed above in no later than fourteen (14) days of the date of this letter. Time is of the essence. If you do not timely comply with the requests within this letter, I intend to turn this matter over to a consumer lawyer for consideration of litigating the issue in federal court.

Sincerely,

s/ Eric Devon Parsons
Social Security Number:
Date of Birth

Enclosures: Original dispute letter; Driver's License/Social Security Card

ALERT: SEVERE WEATHER CONDITIONS ACROSS THE U.S. ...

# USPS Tracking®

FAQs >

Feedback

Remove X

**Tracking Number:**

## 9114999944314027342157

Copy Add to Informed Delivery (https://informeddelivery.usps.com/)

## Latest Update

Your item was delivered to the front desk, reception area, or mail room at 10:27 am on February 22, 2024 in CHICAGO, IL 60661.

---

**Get More Out of USPS Tracking:**

**USPS Tracking Plus®**

## Delivered

**Delivered, Front Desk/Reception/Mail Room**

CHICAGO, IL 60661
February 22, 2024, 10:27 am

**Out for Delivery**

CHICAGO, IL 60661
February 22, 2024, 6:51 am

**Arrived at Post Office**

CHICAGO, IL 60699
February 22, 2024, 6:40 am

**Arrived at USPS Regional Facility**

CHICAGO IL DISTRIBUTION CENTER
February 22, 2024, 2:26 am

**Departed USPS Regional Facility**

CHICAGO IL LOGISTICS CENTER
February 22, 2024, 12:56 am

**Arrived at USPS Regional Facility**

CHICAGO IL LOGISTICS CENTER
February 21, 2024, 10:03 pm

**Departed USPS Regional Facility**

CHARLOTTE NC DISTRIBUTION CENTER
February 21, 2024, 8:29 am

**Arrived at USPS Regional Origin Facility**

CHARLOTTE NC DISTRIBUTION CENTER
February 20, 2024, 10:58 pm

**Departed Post Office**

WACO, NC 28169

February 20, 2024, 4:37 pm

**USPS in possession of item**

WACO, NC 28169
February 20, 2024, 2:55 pm

**Hide Tracking History**

**What Do USPS Tracking Statuses Mean?**
**(https://faq.usps.com/s/article/Where-is-my-package)**

---

**Text & Email Updates**

---

**USPS Tracking Plus®**

---

**Product Information**

**See Less**

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

FAQs